RECEIVED
IN MONROE, LA
NOV 3 0 2006
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

MARY LOUISE SPENCER BENSON, ET AL.   CIVIL ACTION NO. 06-1519

VERSUS                                JUDGE ROBERT G. JAMES

POLICE JURY OF UNION PARISH, ET AL.   MAG. JUDGE KAREN L. HAYES

## RULING

This case arises out of the death of a detainee, Cardell Benson, Sr. ("Decedent"), at the Union Parish Detention Center ("UPDC") on April 2, 2000. Plaintiffs, a number of the Decedent's relatives[1], brought a state law claim for negligence and an Eighth Amendment deliberate indifference claim for lack of adequate medical care against Defendants UPDC and Coregis Insurance Company ("CIC").[2]

This case originated in the Third Judicial District for Union Parish. In state court, Defendants moved for summary judgment on Plaintiffs' negligence claim. In response, Plaintiffs, for the first time, raised a deliberate indifference claim under the Eighth Amendment. Thereafter, the case was removed to federal court.

Pending before the Court are UPDC's and CIC's Motions for Summary Judgment [Doc. Nos. 10 and 33, respectively], claiming that there is no evidence that UPDC breached a duty

---

[1] Plaintiffs include Mary Louise Spencer Benson, Shante Magnolia Spencer, Calvin Lewis Benson, Marjorie LaJuana Benson, Cardell Benson, Jr., and Carl Lee Thomas.

[2] CIC is the insurer of UPDC.

1

owed to the Decedent, and, alternatively, that there is no evidence that UPDC caused or contributed to the death of the Decedent. Plaintiffs filed one opposition [Doc. No. 38] in response to both Defendants' Motions for Summary Judgment, claiming Defendants were negligent and deliberately indifferent. UPDC and CIC each filed a reply [Doc. Nos. 14 and 41, respectively], claiming that there is no evidence that UPDC was deliberately indifferent to the Decedent's serious medical needs.[3]

For the following reasons, UPDC's and CIC's Motions for Summary Judgment are GRANTED.

## I. FACTS AND PROCEDURAL HISTORY

On March 21, 2000, the Decedent was admitted to the Emergency Room at Union General Hospital ("UGH") for injuries sustained during an attempt to escape from a police car. The Decedent was diagnosed with organic brain syndrome and chronic alcoholism by Dr. Richard Moore ("Dr. Moore").

Dr. Moore attempted to have the Decedent admitted to the psychiatric facility at E.A. Conway Medical Center in Monroe, Louisiana, but was unable to do so. Dr. Steven Unkel ("Dr. Unkel") was also unable to find a psychiatric placement for the Decedent.

The Decedent was discharged by Dr. Unkel on March 23, 2000, after finding that he was

---

[3]In their replies, Defendants moved for summary judgment on Plaintiffs' deliberate indifference claims. The Court finds that Plaintiffs have had a reasonable opportunity to respond. In the interest of justice, the Court will rule on Defendants' request for summary judgment on Plaintiffs' claims of negligence and deliberate indifference. The Court will refer to Defendants' replies as "Motions for Summary Judgment."

"medically stable."[4] Dr. Unkel testified that he observed no signs or symptoms suggesting that the Decedent would later have a pulmonary embolism. The Decedent was discharged without any medications.

Subsequent to discharge, the Decedent was arrested by the Union Parish Sheriffs' Department for damage to the police car. The Decedent was incarcerated at UPDC.

UPDC was informed by the Union Parish Sheriffs' Department that doctors attempted to have the Decedent admitted to a psychiatric facility, but were unable to do so. Upon incarceration at UPDC, the Decedent was placed in isolation and observed every fifteen minutes. His physical health was listed as "good," while his mental health was listed as "poor." [Doc. No. 10, Exh. 2, ¶ 5].

On April 2, 2000, the Decedent was found not breathing in his cell and later died at UGH. Dr. Steven Hayne ("Hayne") performed the post-mortem exam and concluded that the Decedent died naturally of a sudden pulmonary emboli, bilateral.[5] The Death Certificate, issued by Union Parish Coroner Bruce Wheeler, stated that the interval of time between onset and death was "minutes." [Doc. No. 10, Exh. 3, p. 24].

On April 2, 2001, Plaintiffs filed a petition for wrongful death in the Third Judicial District Court, Parish of Union, State of Louisiana, Civil Suit No. 37,360, alleging that UPDC was negligent in its custody of the Decedent [Doc. No. 1].

---

[4] Dr. Unkel testified that "medically stable" means no acute heart problems, no pulmonary problems, no gastrointestinal problems, normal lab work, and no shortness of breath. [Doc. No. 10, Exh. 1, p. 22].

[5] In layman's terminology, "[a] pulmonary embolus is when you have a blood clot in your leg and it breaks off from your leg and goes into your lungs and blocks off the blood vessels in your lungs." [Doc. No. 10, Exh. 1, p. 25].

3

On June 27, 2006, UPDC filed a Motion for Summary Judgment in state court. CIC also filed a Motion for Summary Judgment.[6]

On August 31, 2006, Plaintiffs filed an opposition to UPDC's and CIC's Motions for Summary Judgment [Doc. No. 4-3, Exh. B]. In that opposition, Plaintiffs claimed that UPDC was both negligent and deliberately indifferent to the Decedent's serious medical needs in violation of the Eighth Amendment.

On September 5, 2006, UPDC filed a Notice of Removal [Doc. No. 4], with CIC's consent [Doc. No. 5], requesting that the case be removed to the United States District Court for the Western District of Louisiana.

On September 7, 2006, a Removal Order issued [Doc. No. 8], removing the case to the United States District Court for the Western District of Louisiana. The Removal Order directed the parties to re-urge any motions that were pending in state court at the time of removal.

On September 8, 2006, UPDC re-urged its Motion for Summary Judgment [Doc. No. 10] on Plaintiffs' negligence claim.

On September 13, 2006, UPDC filed a reply [Doc. No. 14] to the opposition Plaintiffs filed in state court and moved for summary judgment on Plaintiffs' deliberate indifference claim.

On October 19, 2006, CIC re-urged its Motion for Summary Judgment [Doc. No. 33] on Plaintiffs' negligence claim.

On November 3, 2006, Plaintiffs re-urged their opposition [Doc. No. 38] to UPDC's and CIC's Motions for Summary Judgment, making additional arguments not set forth in their state court filing.

---

[6]It is not clear from the state court record when CIC's motion was filed.

On November 6, 2006, CIC filed a reply [Doc. No. 41] to Plaintiffs' opposition and moved for summary judgment on Plaintiffs' deliberate indifference claim.

Plaintiffs oppose UPDC's and CIC's Motions for Summary Judgment with one opposition. Because CIC is UPDC's insurer, their arguments are the same. Therefore, the Court will address their Motions for Summary Judgment together.

## II. LAW AND ANALYSIS

### A. Federal Summary Judgment Standard of Review

Summary judgment is appropriate only when the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show there are no genuine issues as to any material fact and the moving party is entitled to judgment as a matter of law.[7] Fed. R. Civ. P. 56(c). The moving party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record which highlight the absence of genuine issues of material fact. *Topalian v. Ehrmann*, 954 F.2d 1125, 1132 (5th Cir. 1992). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

If the moving party can meet its initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994). To satisfy this burden, "they are required to identify

---

[7]Plaintiffs' opposition cites the state and federal summary judgment standard. However, the Federal Rules of Civil Procedure apply to actions commenced in state court and removed to federal court. Fed. R. Civ. P. 81(c). Therefore, the federal summary judgment standard applies.

specific evidence in the record, and to articulate the precise manner in which that evidence supports their claim." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (internal quotations omitted). In evaluating the evidence tendered by the parties, the court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255.

### B.  State Law Negligence Claim

To prevail on a negligence claim under Louisiana Civil Code article 2315, Plaintiffs must show:

> (1) . . . the defendant owe[d] a duty to the plaintiff; (2) . . . this duty [was] breached; (3) . . . the breach of this duty [was] a substantial factor in bringing about the harm to the plaintiff, i.e., [] a cause-in-fact of the harm which occurred; and (4) . . . the risks and the harm encountered by the plaintiff fall within the scope of the protection afforded by the duty breached.

*Mayes v. State*, 96-789 (La. App. 3 Cir. 12/11/96); 685 So.2d 497, 500, *writ denied*, 97-0113 (La. 3/7/97); 689 So.2d 1376. All four elements must be satisfied in order for the plaintiff to recover. *Misenheimer v. West Baton Rouge Parish Sheriff's Office*, 95-2427 (La. App. 1 Cir. 6/28/96); 677 So.2d 159, 162, *writ denied*, 96-1853 (La. 10/25/96); 681 So.2d 371.

Plaintiffs claim that UPDC was negligent in its failure to provide the Decedent with medical care.[8]

---

[8] In their Statement of Material Facts, Plaintiffs also claim that UPDC was negligent in taking the Decedent into custody, since it knew, or should have known, that its employees could not competently care for a person suffering from a mental illness. However, Plaintiffs have provided no legal authority or argument in their memorandum to support this claim. Even if the Court considered this claim, Plaintiffs cannot show there is a causal link between inadequate care for a person suffering from a mental illness and death from a pulmonary embolism.

6

Defendants claim that they are entitled to summary judgment since Plaintiffs cannot prove that any duty was breached and, alternatively, cannot prove that UPDC caused or contributed to the Decedent's death.

### 1. Duty

Plaintiffs claim that "since the decedent was ill or sick while he was being held at the UPDC, it was the duty of the authorities at the UPDC to see that he was properly fe[d] and provided with proper medical care."

Prison authorities owe a duty to use reasonable care to protect inmates from harm. *See Hardy v. Foti*, 2001-1257 (La. App. 4 Cir. 2/27/02), 812 So.2d 792, 794. Therefore, UPDC owed a duty to protect the Decedent from harm.

### 2. Breach

Plaintiffs claim that UPDC should have provided the Decedent with medical care because the Decedent was in obvious physical distress and they complained to UPDC about his physical health. Plaintiffs claim that the Decedent appeared malnourished, could barely walk, complained of pain in his right side, and was bruised on his face. They also claim that they advised UPDC that the Decedent was in need of his medication, could not properly feed himself, and needed to be hospitalized.

Defendants claim that Plaintiffs cannot prove breach of any legal duty because UPDC was unaware of the Decedent's physical distress. The Decedent was released from UGH in a medically stable condition, was given no medications upon discharge, and was not prescribed any medications following discharge. During periodic checks, Defendants claim that the Decedent

7

did not exhibit any evidence of any medical problem and did not request any medical care.

The scope of UPDC's duty includes the reasonable provision of medical care only when the inmate's physical condition discloses the need for such care. *See Abraham v. Maes*, 430 So.2d 1099 (La. App. 4 Cir. 1983).

There is a factual dispute whether the Decedent exhibited signs of physical distress. Several relatives who visited the Decedent during the time he was in UPDC custody claim he appeared to be in physical distress. While Defendants contend otherwise, on summary judgment, the Court must accept Plaintiffs' evidence as true, and draw all justifiable inferences in their favor. *Anderson*, 477 U.S. at 255. Additionally, Defendants have not disputed (nor responded to) Plaintiffs' claim that they advised UPDC that the Decedent needed medical care.

Therefore, for purposes of summary judgment, the Court finds that UPDC breached its duty.

### 3. Cause-in-fact

Assuming, *arguendo*, that UPDC breached its duty, Defendants claim that Plaintiffs cannot prove the breach caused the Decedent's death.

The evidence submitted by Plaintiffs offers several bases for finding that UPDC's acts or omissions caused the Decedent's death: UPDC's failure to provide the Decedent with his prescribed medication or with medication used to prevent a pulmonary emboli; UPDC's failure to provide the Decedent with medical care in response to two common causes of a pulmonary emboli, inactivity and acute trauma; and UPDC's abuse of discretion in allowing family visitation.

Dr. Unkel testified that the Decedent was previously prescribed Librium and Ativan and that these medications are typically prescribed to control the behavioral symptoms of organic brain syndrome. He also testified that the lack of either of these medications would not have had a detrimental physical effect on the Decedent. Plaintiffs have not refuted this assertion, nor provided any evidence regarding which medications they contend the Decedent was deprived of. Therefore, Plaintiffs cannot prove causation on this basis.

Dr. Unkel also testified that certain forms of medication can prevent further blood clotting, which in turn, can prevent a pulmonary emboli from forming or causing death. However, Plaintiffs have offered no evidence that the Decedent was prescribed such medications. Therefore, Plaintiffs cannot prove causation on this basis.

Dr. Unkel also testified that a common cause of a pulmonary emboli is inactivity. Dr. Unkel testified to the extended period of inactivity that can cause a pulmonary emboli: ". . . like if somebody has a surgery on their leg, hip replacement, somebody who has been in bed for a long period of time and not moving." [Doc. No. 38, Deposition of Dr. Unkel. p. 25]. Plaintiff Georgia Mae Benson Andrews testified that the Decedent was lying down and barely moved during her visit, and Plaintiff Georgia Morean Bilberry Benson testified that the Decedent could barely walk during her visit. However, Plaintiffs have offered no medical evidence that the type of inactivity described could or did cause the pulmonary emboli. Therefore, Plaintiffs cannot prove causation on this basis.

Dr. Hayne testified that a pulmonary emboli could also be caused by acute trauma. In his port-mortem exam, he found that the Decedent suffered from fractured ribs and some abrasions

9

on his feet, face, and hands. However, he testified that these injuries did not cause or contribute to the Decedent's death. Plaintiffs have offered no evidence that these injuries caused the pulmonary emboli. Therefore, Plaintiffs cannot prove causation on this basis.

Finally, Plaintiffs claim that, because they were not allowed reasonable visitation, they were not able to request medical care that would have prevented the Decedent's death. However, Plaintiffs have also offered evidence that several relatives did complain to UPDC that the Decedent needed medical care and hospitalization. Further, Plaintiffs have offered no evidence that additional medical care could have prevented the Decedent's death. Therefore, Plaintiffs cannot prove causation on this basis.

"Louisiana employs, as the primary analysis of causation, the "but for" or the "substantial factor" tests." *Crockett v. Cardona*, 97-CA-2346, p. 4 (La. App. 4 Cir. 5/26/98); 713 So. 2d 802, 804 (*citing St. Hill v. Tabor*, 542 So. 2d 499, 502 (La. 1989)). "Negligent conduct is a cause-in-fact of harm to another if it was a substantial factor in bringing about that harm." *Dixie Drive It Yourself System New Orleans Co. v. American Beverage Co.*, 242 La. 471, 482 (La. 1962).

The Court finds that Plaintiffs have failed to raise a genuine issue of material fact that UPDC's breach was a substantial factor or but-for cause of the Decedent's death.

The Court need not address the final element, as all four elements must be satisfied to prevail. *Misenheimer*, 677 So.2d at 162. UPDC's and CIC's Motions for Summary Judgment on Plaintiffs' negligence claim are GRANTED.

## C. Eighth Amendment Deliberate Indifference Claim

Plaintiffs also claim that the Decedent's death was caused by "the medical care (or lack

10

thereof) that he received while he was in custody at the [UPDC]." Plaintiffs claim that the acts of negligence they asserted in their original petition support their Eighth Amendment deliberate indifference claim.[9]

In order to state a Section 1983 claim for denial of adequate medical care under the Eighth Amendment, a prisoner must allege that the official(s) acted with deliberate indifference to his serious medical needs. *Wilson v. Seiter*, 501 U.S. 294, 303 (1991); *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991). Deliberate indifference encompasses more than mere negligence on the part of prison officials. *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993); *see also, Graves v. Hampton*, 1 F.3d 315, 319 (5th Cir. 1993) (It is well established that negligent or erroneous medical treatment or judgment does not provide a basis for a § 1983 claim). It requires that prison officials be both aware of specific facts from which the inference could be drawn that a serious medical need exists and then the prison official, perceiving this risk, must deliberately fail to act. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Plaintiffs' claim that UPDC was negligent in failing to provide medical care is insufficient as a matter of law to sustain a deliberate indifference claim. Plaintiffs have offered no evidence that UPDC was consciously aware of the Decedent's physical distress and deliberately failed to provide adequate medical care.

Section 1983 complainants must support their claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusive allegations. *See Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995); *Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir.

---

[9]"Notably, each and every act of negligence that the plaintiffs cite in the original petition took place while the decedent was in the custody of the [UPDC]." [Doc. No. 38, p. 4].

11

1986). Plaintiffs' conclusive allegations, without more, do not sufficiently meet the above requirements.

The Court finds that there is no genuine issue of material fact whether UPDC was deliberately indifferent to the Decedent's serious medical needs. UPDC's and CIC's Motions for Summary Judgment on Plaintiffs' deliberate indifference claim are GRANTED.

## III. Attorney Misconduct

The Court will now address the conduct of Plaintiffs' counsel, Otha Nelson, Sr. ("Mr. Nelson"). Mr. Nelson signed and submitted Plaintiffs' opposition [Doc. No. 38]. As Defendants note, Plaintiffs' opposition contains numerous allegations without citation to the record for support.

Per Local Rule 7.5W, a party who files a memorandum in opposition to a motion is required to cite to the authorities upon which he relies.[10] Additionally, it is well settled that the district court is not required to sift through the record in search of evidence to support a party's opposition to summary judgment. *See, e.g., Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). Mr. Nelson did not provide any pinpoint citation to the six depositions attached to Plaintiffs' opposition, totaling approximately 400 pages. Instead, Mr. Nelson stated "[t]he Plaintiffs have also attached a copy of the deposition of Carl Lee Thomas which corroborates the depositions of [four other persons]." [Doc. No. 38, p. 3]. Mr. Nelson's memorandum did not comply with Local Rule 7.5W.

---

[10]Local Rule 7.5W states in pertinent part: "Memoranda shall contain a concise statement of reasons in opposition to the motion, and a citation of authorities upon which respondent relies."

The Court also notes that the memoranda submitted by Mr. Nelson is deficient with respect to its content. Mr. Nelson fails to make any arguments to support Plaintiffs' claims, and, instead, cites the relevant legal standard.

Mr. Nelson is hereby warned that similar misconduct in the future will result in sanctions.

## IV. Conclusion

For the reasons set forth in this ruling, UPDC's and CIC's Motions for Summary Judgment [Doc. Nos. 10, 14, 33 and 41] are GRANTED. Plaintiffs' negligence claim under state law and deliberate indifference claim under the Eighth Amendment are DISMISSED WITH PREJUDICE.

MONROE, LOUISIANA, this 30th day of November, 2006.

ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE